IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| RACHEL KOMINSKY and JOHN KOMINSKY, | CV 10-08-BLG-CSO |
| Plaintiff, | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| vs. | |
| DAVE SMITH CHEVROLET OLDSMOBILE PONTIAC CADILLAC, INC., d/b/a DAVE SMITH MOTORS, | |
| Defendant. | |

Plaintiffs Rachel and John Kominsky (the "Kominskys") brought this action against Defendant Dave Smith Motors ("DSM") alleging leaks in the sunroof of a new vehicle they purchased from DSM. *Plaintiffs' Complaint (Court Doc. 1) at 3.* Currently before the Court is DSM's Motion to Compel Arbitration.

## I.   <u>BACKGROUND</u>

In July 2007, the Kominskys purchased a new Chevrolet Silverado 2500 Duramax diesel pickup truck from DSM. *Scheduling*

*Order (Court Doc. 17) at 3.*  The Kominskys allege that in the summer of 2009 the truck's sunroof began to "leak substantially" and "damaged the [truck's] headliner and DVD system."  *Court Doc. 1 at ¶ 4.*  DSM acknowledges that "[t]he Silverado was equipped with a sunroof manufactured by Inalfa Sunroofs and installed by Dave Smith Motors." *Brief in Support of Defendant's Motion for Protective Order (Court Doc. 20) at 2.*

The Kominskys allege that Dave Smith Motors intentionally mislead Rachel Kominsky by failing to disclose that the sunroof was an aftermarket installation.  *Court Doc. 1 at ¶ 7.*  On January 19, 2010, the Kominskys filed this action asserting the following claims:

(1)    Violations of the Montana Consumer Protection Act;

(2)    Fraud;

(3)    Negligent Misrepresentation;

(4)    Breach of Express Warranty by Affirmation, Promise, Description, Sample;

(5)    Breach of Implied Warranty of Merchantability;

(6)    Breach of Implied Warranty of Fitness for a Particular

Purpose;

(7)    Violations of Good Faith Obligation; and

(8)    Negligence.

*Court Doc. 1 at 4-13.*

## II.    <u>PARTIES' ARGUMENTS</u>

DSM contends that the parties contractually agreed to arbitrate any disputes arising out of the Kominskys' truck purchase and, as a result, the Kominskys are precluded from bringing this suit. *Court Doc. 44 at 1-2.* In support of its motion, DSM has filed an "Agreement to Arbitrate" signed by Rachel Kominsky. [1] *Court Doc. 44-2.*

DSM argues that, pursuant to Montana's choice of law standards, Idaho law governs enforcement of the arbitration agreement because the sale, final negotiation of terms, signature of sale documents, and delivery of the pickup truck all took place in Idaho. *Court Doc. 44 at 5.*

---

[1]DSM also attached, in support of its motion, an arbitration agreement signed by John Kominsky on June 28, 2007, (Court Doc. 44-1). It appears from the record that only the agreement signed by Rachel Kominsky on July 31, 2007, is related to the truck sale at issue here. The agreement signed by John Kominsky on June 28, 2007, pertains to the sale of a different vehicle. See Court Docs. 44-1 (dated June 28, 2007); Court Doc. 44-6 (Depo. J. Kominsky) at 2 [Depo. Pgs 10:1-20].

Because Idaho takes a "broad stance on the enforceability of arbitration clauses[,]" and this dispute falls within the scope of the arbitration agreement, DSM argues that its motion to compel arbitration should be granted. *Id. at 7-8.* DSM further argues that arbitration is mandated even if the Court were to apply Montana law. *Id. at 9.*

In response, the Kominskys contend that the arbitration agreement is not enforceable because the purchase agreement was a fully integrated contract which made no mention of arbitration. *Court Doc. 49 at 3-4.* The Kominskys argue that the parol evidence rule prohibits consideration of the arbitration agreement. *Id. at 4.* The Kominskys further contend that the arbitration agreement creates an ambiguity that must be construed against the drafter of a contract, DSM in this case, and thus the arbitration agreement is not enforceable against the Kominskys. *Id. at 13-15.*

Additionally, the Kominskys argue that if the Court does consider the arbitration agreement, Montana law governs. *Id. at 15.* Under Montana law, the Kominskys argue that the arbitration agreement is a contract of adhesion, and the terms are not within the Kominskys'

reasonable expectations.  Therefore, the Kominskys contend the agreement is unenforceable.  *Id. at 21*.

The Kominskys also argue that because there was no consideration with respect to the arbitration agreement it is not a valid contract.  *Id. at 28*.  They conclude that the arbitration agreement is both procedurally and substantively unconscionable due to a lack of voluntariness, knowledge, explanation, consideration, and inferior bargaining position.  *Id. at 29-30*

## III.  DISCUSSION

### A.  Choice of Law

"Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination."  *Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001).  Accordingly, the Court applies Montana's choice of law rules to determine which state law governs the interpretation of the contract.

Montana has adopted the § 188 of the *Restatement (Second) of Conflict of Laws* to govern choice of law questions with respect to contracts where the parties have not designated a choice of law.  *Tucker*

*v. Farmers Insurance Exchange*, 215 P.3d 1, ¶ 40 (Mont. 2009) ("Section

188 of the *Restatement* governs situations in which the contracting

parties fail to select an effective choice of law.") (citing *Modroo v.*

*Nationwide Mutual Fire Insurance Company*, 191 P.3d 389, ¶ 55 (Mont.

2008)).  Section 188 provides:

> (1)   The rights and duties of the parties with respect to an issue
> in contract are determined by the local law of the state
> which, with respect to that issue, has the most significant
> relationship to the transaction and the parties under the
> principles stated in § 6 [of the *Restatement*].
>
> (2)   In the absence of an effective choice of law by the parties
> (see § 187), the contacts to be taken into account in applying
> the principles of § 6 to determine the law applicable to an
> issue include:
>
> > (a)   the place of contracting,
> > (b)   the place of negotiation of the contract,
> > (c)   the place of performance,
> > (d)   the location of the subject matter of the contract, and
> > (e)   the domicile, residence, nationality, place of
> > incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their
> relative importance with respect to the particular issue.

*Restatement (Second) Conflict of Laws* § 188.

Section 6 of the *Restatement*, referenced in § 188, provides, in

relevant part, that "[a] court, subject to constitutional restrictions, will

follow a statutory directive of its own state on choice of law." Comment
(a) to §6(1) explains that "[a] court ... must follow the directions of its
legislature. The court must apply a local statutory provision directed to
choice of law provided that it would be constitutional to do so."

MCA § 28-3-102 governs choice of law determinations in Montana
contract disputes: "A contract is to be interpreted according to the law
and usage of the place where it is to be performed or, if it does not
indicate a place of performance, according to the law and usage of the
place where it is made." Contracts are performed where the primary
activity of the contract takes place and, regarding contracts for the sale
of goods, the primary activity is the transfer of possession of the good.
*Cf., Tractor & Equipment Co. v. Zerbe Bros.*, 32 P.3d 721, 723 (Mont.
2001) (When applying Montana's venue statute, which also contains a
"place of performance" provision, the Montana Supreme Court
determined that the place of performance under a contract for the sale
of goods is where possession of the good is delivered.); MCA § 25-2-
121(2)(a) (contracts for the sale of goods are properly venued in the
county where possession of the goods is to be delivered); *Depee v. First*

*Citizen's Bank of Butte*, 852 P.2d 592, 594 (Mont. 1993).

Here, neither the truck's purchase order *(Court Doc. 44-4)* nor the disputed arbitration agreement *(Court Doc. 44-2)* contains a choice of law provision.  Consequently, § 28-3-102, MCA, governs the choice of law determination.  The contract at issue is for the sale of a truck, a good.  Rachel Kominsky first contacted DSM regarding a potential truck purchase because of the positive experience she and her husband had when previously purchasing a vehicle at DSM in Idaho.  *(Court Doc. 49-1 at 4 [Depo. Pgs. 16:20-23]).*  Although Rachel Kominsky made some preliminary inquiries regarding the truck over the phone from Montana, *(Court Doc. 49-1 at 4 [Depo. Pgs. 16:15-25, 17:1-13]),*  the ultimate negotiations for the truck took place at DSM's Idaho dealership.  *Id. [Depo. Pgs. 26:22-25, 27:1-18, 28:1-25].*  Moreover, the contract was signed in Idaho, and Rachel Kominsky took possession of the vehicle in Idaho.  *Id. [Depo. Pgs. 28:19-25].*  The primary activity under the contract was the sale of the truck and Rachel Kominsky took possession of the truck in Idaho.  Although DSM was aware that Rachel

would take the vehicle to Montana,[2] the contract for sale of the truck

was performed in Idaho.  Accordingly, the Court concludes that the

place of performance was Idaho, and under § 28-3-102, MCA, Idaho law

governs the interpretation of the purchase and arbitration agreements.

## B.   Arbitration Agreement

### 1.   Parol Evidence

The arbitration agreement at issue is not included as part of the

purchase agreement, but is a separate, signed document.  *Court Doc.*

*44-2.*  The purchase agreement contains the following language,

generally referred to as an integration or merger clause:

> The front and back of this Order comprise the entire agreement
> affecting this purchase and no other agreement or understanding
> of any nature concerning same has been made or entered into, or
> will be recognized.

*Court Doc. 44-4 at 1.*  Based on this language, the Kominskys contend

---

[2]The contract lists Rachel Kominsky's Billings address and phone
number.  *Court Doc. 44-4 at 1.*  DSM made photocopies of both Rachel
and John Kominsky's Montana driver's licenses.  *Court Doc. 49-1 at 12.*
DSM filled out an "Idaho Tax Commission – Sales Tax Exemption
Certificate – Vehicle/Vessel" form with the Kominskys which exempted
the Kominskys from paying Idaho sales tax on the vehicle, and
affirmatively stated "[Rachel Kominsky] will take this vehicle to the
state ... of Montana and will immediately license and title it there ... ."
*Court Doc. 49-1 at 13.*

that the parol evidence rule bars consideration or enforcement of the

arbitration agreement.  *Court Doc. 49 at 3-9.*  To determine whether the

arbitration agreement can be considered, the Court turns to Idaho law.

Idaho has adopted chapter two of the Uniform Commercial Code –

Sales ("UCC") to govern transactions in goods.  *See* I.C. § 28-2-101 to §

28-2-725.  Pursuant to I.C. § 28-2-105(1),[3] the sale of a truck falls

within chapter two of the UCC, and thus I.C. § 28-2-202 governs the

consideration of parol evidence.  In pertinent part, I.C. § 28-2-202,

states:

> Terms with respect to which the confirmatory memoranda of the
> parties agree or which are otherwise set forth in a writing
> intended by the parties as a final expression of their agreement
> with respect to such terms as are included therein may not be
> contradicted by evidence of any prior agreement or of a
> contemporaneous oral agreement but may be explained or
> supplemented:
>
> (a)     by course of performance, course of dealing, or usage of
>         trade (section 28-1-303); and

---

[3]I.C. § 28-2-105(1) provides:  "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action."

(b)    by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

I.C. § 28-2-202.  Accordingly, the Idaho Supreme Court has held that the parol evidence rule "allows for the admission of evidence of agreements made prior to or contemporaneously with the contract as long as they are consistent with the terms of the contract and as long as the written contract was not intended as a complete and exclusive statement of the terms of the agreement."  *Borah v. McCandless*, 205 P.3d 1209, 1217 (Idaho 2009) (*citing* I.C. § 28-2-202(b)).  Thus, the Court must make a threshold determination regarding whether "the parties intended a total integration before consistent additional terms are to be excluded."  *Id.*

The integration clause of the purchase agreement here does state that the purchase agreement is the parties' complete agreement.  *See Court Doc. 44-4 at 1.*  But the Idaho Supreme Court has cautioned that "[i]n analyzing whether the parties intended the purchase order as a complete and exclusive statement of the terms of the agreement the trial court should bear in mind that I.C. § 28-2-202, was intended to

liberalize the parol evidence rule and to abolish the presumption that a writing is a total integration." *Anderson & Nafziger v. G. T. Newcomb, Inc.*, 595 P.2d 709, 714 (Idaho 1979) (internal quotation marks omitted).  The Court "should consider not only the language of the agreement but all extrinsic evidence relevant to the issue of whether the parties intended the written agreement to be a complete integration." *Id.*  The Idaho court reasoned:

> Our holding does not deprive the [merger] clause, which alleges the writing is a fully integrated agreement, of all effect.  It does however limit the conclusiveness of such merger language.  The terms of the writing still have superior probative value but are tempered by the trial court's ability to consider extrinsic evidence of the parties' intentions.

*Id.*

At the time that the purchase agreement was signed, DSM and Rachel Kominsky also signed numerous other documents including: (1) Disclaimer of Warranty and Liability for Non-Manufacturer Products and Parts; (2) GM Customer Incentive and OnStar Acknowledgment; (3) Dealer Bonus Certificate; (4) GM New Vehicle Delivery Satisfaction Form; (5) Application for Certificate of Title for a Motor Vehicle; (6) Title and Registration Paperwork Form; (7) Dave Smith Motors

Salesman Follow Up Document; (8) Dave Smith Motors Privacy Notice;

(9) Agreement to Arbitrate Any Claims; (10) Odometer Disclosure

Statement; (11) Idaho State Sales Tax Exemption Certificate; (12) Not

for Resale or Export Notice; (12) Documentation of the Fact that a

Customer's Government Issued Identification has been Verified; and

(13) Acknowledgment that Rachel Kominsky had spoken with a finance

and accessory manager.  *See Court Doc. 54-1.*

The purchase agreement was not drafted with sufficient care, and

there is an apparent contradiction between the purchase agreement's

merger language and the contemporaneous execution of other related

documents.  Nonetheless, the Court must conclude that, under Idaho

law, the merger language in the purchase agreement is not conclusive.

In light of the extrinsic evidence of the parties' contemporaneous

execution of related documents, the Court cannot conclude that the

parties intended the purchase agreement to be the complete and

exclusive statement of their agreement.

Next, the Court must determine if the arbitration agreement is

consistent with the terms of the purchase agreement, and whether it

explains or supplements the terms of the contract in accordance with subsections (a) and (b) of I.C. § 28-2-202, *supra*.  Because there is no mention of arbitration or dispute resolution in the purchase agreement, the arbitration agreement does not contradict the purchase agreement. Instead, it contains an additional term.  The Court further concludes that the additional term is consistent with the purchase agreement because it does not negate any provision of the purchase agreement. *Anderson & Nafziger*, 595 P.2d at 713.  Evidence of "consistent additional terms" is admissible "unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." I.C. § 28-2-202(b).  For these reasons,  the Court must conclude that the arbitration agreement is part of the overall agreement between the parties.

## 2.   Ambiguity

The Kominskys next argue that the execution of the arbitration agreement creates an ambiguity in the sales contract and must be construed against DSM as the drafter.

Whether a contract term is ambiguous is a question of law;

interpretation of the ambiguous term is a question of fact. *Lamprecht*

*v. Jordan, LLC*, 75 P.3d 743, 746 (Idaho 2003). "For a contract term to

be ambiguous, there must be at least two different reasonable

interpretations of the term, or it must be nonsensical." *Swanson v.*

*Beco Const. Co., Inc.*, 175 P.3d 748, 751 (Idaho 2007) (internal citations

omitted). "An unambiguous contract will be given its plain meaning."

*Lamprecht*, 75 P.3d at 746.

Here, the facts do not support the Kominskys' argument that the

contract is ambiguous. The Court has already determined that the

arbitration agreement is part of the sales contract. The purchase

agreement is silent regarding the resolution of disputes arising out of

the purchase of the truck. The arbitration agreement is the sole

document governing the resolution of disputes regarding the truck sale.

*See Court Doc. 54-1.* The arbitration agreement signed by Rachel

Kominsky states, in part:

> The parties to this agreement agree to arbitrate any claim,
> dispute or controversy, including all contractual, statutory and
> common law claims and any state or federal claims, which may
> arise under this agreement. By agreeing to arbitration, as the
> exclusive method to resolve all claims, disputes or controversies,
> the parties understand and agree that they are waiving their

rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes. ... The arbitration provision limits your rights, including your right to maintain a court action.

*Court Doc. 54-1 at 11*.  The Court finds this language to be unambiguous and subject to only one reasonable interpretation.  The term "arbitration" has a settled legal meaning.  *See Swanson*, 175 P.3d at 751 ("To determine whether a contract is patently ambiguous, a court looks at the face of the document and gives the words or phrases used their established definitions in common use of settled legal meanings.").  Furthermore, "[t]he intent of the parties is determined from the plain meaning of the words.   A contract is not rendered ambiguous on its face because one of the parties thought that the words used had some meaning that differed from the ordinary meaning of those words." *Id*. at 752.   Although the Kominsky's brief repeats in at least four places (Court Doc. 49 at 14, 24, 27, 30) that Ms. Kominsky did not know what the word "arbitration" meant, the arbitration agreement itself explains that it means that she is waiving her right to maintain a court action to settle disputes.

In sum, the purchase agreement is silent regarding dispute

resolution and the inclusion of the consistent, additional term

contained in the arbitration agreement does not inject an ambiguity

into the sales contract as a whole simply because the purchase

agreement contains merger language.

### 3.    Unconscionability

The Kominskys also argue that the arbitration agreements are

unconscionable.  "In order for a contractual provision to be voided for

unconscionability, it must be both procedurally and substantively

unconscionable."  *Wattenbarger v. A.G. Edwards & Sons, Inc.*, ___ P.3d

___, 2010 WL 2560036 at *9 (June 28, 2010 Idaho).  Procedural

unconscionability concerns the bargaining process, and "exists when

the contract was not the result of free bargaining between the parties."

*Id.* at 10 (internal quotation marks omitted).  A lack of voluntariness

and lack of knowledge are generally indicators of procedural

unconscionability.  *Id.*

> Indicators of lack of voluntariness include the use of high-
> pressure tactics, coercion, oppression or threats short of duress.  A
> lack of voluntariness can be shown by an imbalance in bargaining
> power resulting from the non-negotiability of the stronger party's
> terms and the inability to contract with another party due to
> time, market pressures, or other factors.  Indicators of a lack of

knowledge include a lack of understanding regarding the contract terms arising from the use of inconspicuous print, ambiguous wording, or complex legalistic language; the lack of opportunity to study the contract and inquire about its terms; or the disparity in sophistication, knowledge, or experience of the parties.

*Id. (quoting Nw Pipeline Corp. v. Forrest Weaver Farm, Inc.,* 646 P.2d 422, 425 (Idaho 1982). "Unfair surprise, whether from ambiguity, the use of inconspicuous print, or complex legalistic language, can cause a party to be uninformed about the terms of the contract and is a factor that can establish procedural unconscionability, not substantive unconscionability." *Lovey v. Regence Blue Shield of Idaho*, 72 P.3d 877, 883 n.2 (Idaho 2003).

Substantive unconscionability focuses on the terms of the provision at issue. A contract term may be substantively unconscionable if "it is a bargain no reasonable person would make or that no fair and honest person would accept ... [, or] is one-sided or oppressive." *Wattenbarger*, 2010 WL 2560036 at *9.

The Court concludes that the arbitration agreement is not procedurally unconscionable. The Kominskys argue the arbitration agreement is procedurally unconscionable because "[t]he agreement is a

pre-form agreement that Rachel Kominsky did not have the ability to bargain about the terms of.  Further, Rachel Kominsky testified she did not know what the word arbitration meant nor did anyone explain the agreement to her." *Court Doc. 49 at 30*.  Although the Court doubts that DSM would have negotiated regarding either the existence of or the terms of its arbitration agreement, the Court must reject the Kominsky's arguments.

As an initial matter, the Court notes that "an adhesion contract cannot be held procedurally unconscionable solely because there was no bargaining over the terms.  Adhesion contracts are a fact of modern life. They are not against public policy." *Lovey*, 72 P.3d at 883.  Additionally, it appears there was neither a lack of voluntariness nor a lack of knowledge here.  With respect to voluntariness, there is no evidence that Rachel Kominsky could not have purchased a vehicle elsewhere due to market pressures or that she was subjected to high-pressure or coercive tactics.  On the contrary, it appears from the record that Rachel Kominsky specifically sought to do business with DSM instead of another dealership, *Court Doc. 44-5 (Depo. R. Kominsky) at 4 [Depo.*

*Pgs. 16:15-25, 17:1-13]*, and she reported having had positive experiences with DSM in the past and being satisfied overall with her experience at DSM regarding this particular purchase, *id. at 2 [Depo. Pgs. 6:23-25, 7:1].*  Furthermore, while Rachel Kominsky testified that she did not understand the meaning of the word arbitration, *Court Doc. 49-1 (Depo. R. Kominsky) at 7 [Depo. Pgs. 72:2-6]*, she never asked any questions about the arbitration agreement, *id. [Depo. Pgs. 72:7-10].* And, while the Kominskys claim there was unequal bargaining power between the parties, Rachel Kominsky testified that she was able to successfully negotiate the inclusion of the cost of a DVD player in the truck's base price, and she had conducted extensive market research regarding the value of the truck she was purchasing from DSM.  *Court Doc. 44-5 (Depo. R. Kominsky) at 6 [Depo. Pgs. 22:14-25, 23:1-17], 5 [Depo. Pgs. 19:3-25, 20-29:1-16].*  Accordingly, the Court concludes that this transaction was voluntary.

With respect to knowledge, an examination of the plain language of the arbitration agreement reveals that it is clear and does not use complex legalese.  The arbitration agreement signed by Rachel

Kominsky states: "The arbitration provision limits your rights, including your right to maintain a court action." *Court Doc. 44-2.* Furthermore, Rachel Kominsky testified that prior to 2007 she had been involved in the purchase or sale of four or five vehicles, and thus was not an inexperienced, unsophisticated consumer. *Court Doc. 44-5 (Depo. R. Kominsky) at 2 [Depo. Pgs. 8:12-14].* In addition, the Court notes that the arbitration agreement was clearly labeled "Agreement to arbitrate any claims."

Accordingly, the arbitration agreement is not procedurally unconscionable. Thus, the provision cannot be voided on the basis of unconscionability because it is not both procedurally and substantively unconscionable. The Court need not reach the issue of substantive unconscionability.

### 4.   <u>Reasonable Expectations</u>

The Kominskys further argue that the arbitration agreement is unenforceable because the sales contract is a contract of adhesion and the arbitration provision was not within Rachel Kominsky's reasonable expectations. *Court Doc. 49 at 25.* The Kominskys base this argument

on Montana law holding that a contract of adhesion will not be enforced against the weaker party if it is not within that party's reasonable expectations, or, even if it is within their reasonable expectations, is unduly oppressive, unconscionable, or against public policy. *Court Doc. 49 at 25; LaFournaise v. Montana Developmental Center*, 77 P.3d 202, 204 ¶ 12 (Mont. 2003).

"States may not invalidate arbitration agreements under state law ... that is applicable only to arbitration provisions.  Rather, the validity of either a contract to arbitrate or an arbitration provision in a contract must be determined under contract defenses that are generally applicable to all contracts."  *Lovey*, 72 P.3d at 881 (internal citations omitted).  The doctrine of reasonable expectations or adhesion contracts, upon which the Kominskys have based their argument, has been rejected in Idaho.  *J.A. Casey v. Highlands Insurance Co.*, 600 P.2d 1387, 1391 (Idaho 1979).  The court rejected the doctrine of reasonable expectations, and instead relied "upon the traditional basic principles involved in construing contracts."  *Id.  See also Farmers Ins. Co. of Idaho v. Talbot,* 987 P.2d 1043, 1049 (Idaho 1999).  As a result,

the Kominskys' argument in this respect also fails.

## IV.  <u>CONCLUSION</u>

In light of the foregoing,

IT IS ORDERED that Defendant's Motion to Compel Arbitration (*Court Doc. 43*) is **GRANTED**.

IT IS FURTHER ORDERED that **on or before December 20, 2010**, the parties shall file status reports indicating whether any issues remain in this action and show cause, if any, why Plaintiffs' claims should not be dismissed and judgment entered.

DATED this 29th day of November, 2010.

/s/ Carolyn S. Ostby
United States Magistrate Judge